UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60516-RUIZ/STRAUSS

**BRIAN WATSON,**

    Plaintiff,

v.

**KILOLO KIJAKAZI,**
Acting Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") [DE 17] and Defendant's Motion for Summary Judgment ("Defendant's Motion") [DE 18]. This case has been referred to me for a ruling on all pre-trial, non-dispositive matters and for a report and recommendation on any dispositive matters [DE 4]. I have reviewed both motions, all summary judgment materials, and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that Plaintiff's Motion [DE 17] be **DENIED** and that Defendant's Motion [DE 18] be **GRANTED**.

## BACKGROUND

### I.    PROCEDURAL HISTORY

Plaintiff applied for disability insurance benefits and supplemental security income on August 1, 2019, alleging a disability onset date of October 1, 2018 ("Alleged Onset Date"). Tr. 16, 231-44. His claims were denied initially and upon reconsideration. Tr. 16, 121-71. Thereafter, Plaintiff appeared with counsel at a hearing before an Administrative Law Judge ("ALJ") on

August 19, 2020; a vocational expert ("VE") also appeared and provided testimony at the hearing. Tr. 34-63. On September 10, 2020, the ALJ issued her decision, finding that Plaintiff was not disabled under the Social Security Act. Tr. 16-28. On January 9, 2021, the Appeals Council denied Plaintiff's request for review, thereby leaving the ALJ's decision as the final decision of the Commissioner. Tr. 1-3. Consequently, on March 5, 2021, Plaintiff filed this action seeking judicial review of the Commissioner's decision.

II.     **PLAINTIFF'S BACKGROUND**

Plaintiff was 28 years old on the Alleged Onset Date and 30 years old both at the time of his hearing before the ALJ and on the date the ALJ issued her decision. *See* Tr. 26, 232. He speaks and understands English and is a high school graduate. Tr. 44, 228, 252, 254. Plaintiff has past relevant work experience as a construction laborer, retail stocker, and pizza baker. Tr. 26, 57-58, 254.

**STANDARD OF REVIEW**

In reviewing claims brought under the Social Security Act, a court's role is limited. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's findings of fact must be affirmed if they are based upon "substantial evidence." *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence is . . . such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). It "is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d

1232, 1240 n.8 (11th Cir. 2004)). Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Id.* (quoting *Phillips*, 357 F.3d at 1240 n.8); *Bloodsworth*, 703 F.2d at 1239. In addition to determining whether the Commissioner's factual findings are supported by substantial evidence, courts must determine whether the ALJ applied the correct legal standards. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## DISCUSSION

### I.     THE SEQUENTIAL EVALUATION

A "disability" is defined as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In making a disability determination, "the ALJ must consider the evidence in its entirety, including: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant . . . and (4) the claimant's age, education, and work history." *Maffia v. Comm'r of Soc. Sec.*, 291 F. App'x 261, 262-63 (11th Cir. 2008) (quoting *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)). *See also Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982).

To arrive at a determination as to disability, the ALJ must undertake the sequential evaluation embodied in 20 C.F.R. §§ 404.1520 and 416.920. This process requires that the ALJ first determine whether the claimant is presently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, a finding of "no disability" is made.

If the claimant is not engaged in such work, then the ALJ must proceed to the second step and determine whether the claimant suffers from a "severe impairment." An impairment is severe

if it significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The third step requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). If not, the inquiry will proceed to the next stage.

Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). The Regulations define RFC as "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

If the claimant establishes an inability to return to past relevant work, the inquiry turns to step five. "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)). If the Commissioner points to

possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.* At this fifth and final step, the ALJ must resolve whether the claimant is actually capable of performing other work. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c).

To help evaluate whether sufficient jobs exist that can be performed given the claimant's age, education, and physical limitations, the Commissioner has promulgated Medical Vocational Guidelines. *See* 20 C.F.R. § 404, subpt. P, app. 2. The guidelines may apply "where a person is not doing substantial gainful activity and is prevented by a severe medically determinable impairment from doing vocationally relevant past work." 20 C.F.R. §§ 404.1569, 416.969. The guidelines are composed of detailed grids and rules, which direct a finding of disabled or not disabled based on a claimant's RFC, age, education, and previous work experience. *Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).

Yet, the guidelines "do not cover all possible variations of factors" and are inapplicable "if one of the findings of fact about the person's vocational factors and [RFC] is not the same as the corresponding criterion of a rule." 20 C.F.R. §§ 404.1569, 416.969. Therefore, "[e]xclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (citation omitted). *See also Walker*, 826 F.2d at 1002-03; *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991). Nevertheless, in such situations, the guidelines may serve as a framework to determine whether sufficient jobs exist within a claimant's range of RFC. *Hargis*, 945 F.2d at 1490. However, the Commissioner may carry his or her burden through the use of a VE when exclusive reliance on the guidelines is not appropriate. *Chaney-Everett v. Astrue*, 839 F. Supp. 2d 1291, 1299 (S.D. Fla.

5

2012) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Walker*, 826 F.2d at 1003). A VE provides the ALJ with a realistic appraisal of the work that a claimant is capable of performing. *Id.* (citing *Walker*, 889 F.2d at 50).

## II.   ALJ'S APPLICATION OF THE SEQUENTIAL EVALUATION

After considering the evidence, the ALJ found that Plaintiff was not disabled. Tr. 27-28. Initially, the ALJ addressed some preliminary issues and outlined in detail the five steps of the sequential evaluation. Tr. 16-18. Then, addressing the first step in the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the Alleged Onset Date. Tr. 18. Next, the ALJ found that Plaintiff had the severe impairments of schizophrenia and depression. Tr. 19. She also determined that his impairments of hypertension and obesity were non-severe. Tr. 19. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 20.

The ALJ next assessed Plaintiff's RFC, determining, "[a]fter careful consideration of the entire record," that Plaintiff had the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember and carry out simple instructions; concentrate and persist to complete simple tasks with normal breaks over an 8-hour workday; tolerate occasional interaction with supervisors, coworkers and the public; and adjust to gradual changes in a routine work setting.

Tr. 22. As part of this assessment, the ALJ noted that she considered all of Plaintiff's symptoms and the extent to which his symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Tr. 22. Additionally, the ALJ stated that she considered the medical opinion evidence and prior administrative medical findings in accordance with 20 C.F.R.

§§ 404.1520c and 416.920c. *Id.* She then proceeded to discuss the evidence of record, concluding that the totality of the evidence supported her RFC determination. *See* Tr. 22-26.

After assessing Plaintiff's RFC, the ALJ noted that Plaintiff had past relevant work experience as a construction laborer, retail stocker, and pizza baker. Tr. 26. The ALJ determined that Plaintiff could perform his past relevant work as a construction laborer (as actually performed). Tr. 26. While such a finding results in a step 4 denial, the ALJ nevertheless proceeded to step 5 and made alternative findings. Tr. 26-27. Specifically, relying on the VE's testimony, she determined that an individual with Plaintiff's age, education, work experience, and RFC is able to perform the occupations of packager, dishwasher, and scrap sorter, occupations for which there are collectively more than 675,000 jobs in the nation. Tr. 27. Therefore, the ALJ found that Plaintiff is capable of making a successful adjustment to other work – in addition to his ability to perform his past relevant work as a construction laborer – existing in significant numbers in the national economy. Tr. 27. Based upon her finding at step 4 and her alternative finding at step 5, the ALJ found that Plaintiff was not disabled from the Alleged Onset Date through the date of the ALJ's decision. Tr. 27.

## III.   ANALYSIS

Plaintiff raises two issues. First, Plaintiff contends that the ALJ erred in evaluating the prior administrative medical findings of Kevin Ragsdale, Ph.D., a state agency psychological consultant. Second, Plaintiff raises a constitutional argument that he contends requires remand for a new hearing before a new ALJ. As discussed herein, both arguments fail.

### A.   DR. RAGSDALE'S FINDINGS

Plaintiff has failed to establish any error with respect to the ALJ's consideration of Dr. Ragsdale's findings. Because Plaintiff's claims were filed after March 27, 2017, the ALJ was

required to consider the medical opinion evidence and prior administrative medical findings in Plaintiff's case in accordance with 20 C.F.R. §§ 404.1520c and 416.920c.  Under these regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)."  20 C.F.R. §§ 404.1520c(a), 416.920c(a); *see also Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 498 (11th Cir. 2021) (noting that the requirement to assign weight to medical opinions has been omitted from the revised regulation).  Rather, the ALJ must evaluate the persuasiveness of medical opinions and prior administrative medical findings based upon five factors: "(1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) 'other factors that tend to support or contradict' the opinion" or finding.  *Walker v. Soc. Sec. Admin., Comm'r*, No. 21-12732, 2022 WL 1022730, at *2 (11th Cir. Apr. 5, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)).  Supportability and consistency are the most important factors.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Although an ALJ is no longer required to provide a specific weight to medical opinions – a requirement under the prior regulation, *see* 20 C.F.R. §§ 404.1527, 416.927 – the ALJ still needs to articulate how persuasive the ALJ finds medical opinions and prior administrative medical findings to be.  20 C.F.R. §§ 404.1520c(b), 416.920c(b).

Nonetheless, §§ 404.1520c and 416.920c make clear that in doing so, an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In other words, if a single source offers multiple medical opinions or multiple administrative medical findings, an ALJ only needs to collectively address the source's opinions or findings in a single analysis rather than including a separate analysis for each opinion or finding.  20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  In doing so, the ALJ must explain how he or she

considered the factors of supportability and consistency, but the ALJ is generally not required to explain how he or she considered the other three factors. 20 C.F.R. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3). Under the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Under the consistency factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, Plaintiff initially frames his argument regarding Dr. Ragsdale (in Plaintiff's issue heading) as follows: "The ALJ failed to apply the correct legal standards to the opinion of Dr. Ragsdale." Plaintiff's Motion at 4. To the extent Plaintiff is arguing that the ALJ did not apply the correct legal standard, his argument fails. The ALJ clearly stated that she "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." Tr. 22. As noted above, these are the exact regulations that the ALJ was required to apply. Additionally, not only did the ALJ identify the correct regulations, she specifically noted that she took into account the opinion of the state agency psychologists (i.e., Dr. Ragsdale) and explained that she found the opinion to be persuasive based on the supportability and consistency factors. Tr. 24. Thus, the ALJ's decision leaves no doubt that she applied the correct standard.[1]

---

[1] *Cf. Planas*, 842 F. App'x at 497-98 ("For starters, the ALJ applied the correct regulatory standard in evaluating the medical opinion evidence. The ALJ not only cited the proper regulation, but also articulated her analysis in a manner wholly consistent with the applicable regulation.").

9

Notwithstanding the way Plaintiff's heading frames the issue, the body of Plaintiff's Motion instead takes issue with the ALJ's decision not to specifically mention certain parts of Dr. Ragsdale's opinion and argues that the ALJ did not sufficiently incorporate Dr. Ragsdale's opinion into Plaintiff's RFC.  Specifically, Plaintiff contends that the ALJ failed to mention or account for Dr. Ragsdale's opinions that Plaintiff: (1) "may have trouble remaining optimally focused and consistently displaying exemplary persistence; these difficulties would likely be most noticeable in fast-paced, detail-intensive jobs and positions requiring him to 'team up' with others on a regular basis"; (2) "might have some problems in occupations where one's success is largely contingent on the ability to consistently display interpersonal facility with customers and/or collaborate effectively/amiably with coworkers/supervisors" but could manage "perfunctory interactions." Plaintiff's Motion at 6-7 (quoting Tr. 95, 108).

As an initial matter, the mere fact that the ALJ did not specifically discuss these statements is of no moment.  The applicable regulations provide in no uncertain terms that an ALJ is "not required to articulate how [the ALJ] considered each medical opinion or prior administrative medical finding from one medical source individually."   20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).  Thus, the regulations themselves undercut Plaintiff's argument.

More importantly, it appears that the ALJ *did* account for the limitations Dr. Ragsdale described in the ALJ's RFC determination – which becomes clearer after considering the full context of the comments Plaintiff highlights in his motion.  Dr. Ragsdale's first statement was made in the context of discussing Plaintiff's "sustained concentration and persistence limitations," where Dr. Ragsdale found Plaintiff moderately limited in some respects and not significantly limited in other respects. Tr. 94-95.  Dr. Ragsdale's full concluding statement in this section (of which Plaintiff's Motion conveys a portion) was:

> [Plaintiff] may have trouble remaining optimally focused and consistently displaying exemplary persistence; these difficulties would likely be most noticeable in fast-paced, detail-intensive jobs and positions requiring him to "team up" with others on a regular basis. Nevertheless, with the benefit of conventional breaks, [Plaintiff] would be able to be sufficiently attentive and effective over the course of normal workday while completing simple job tasks with nominal social demands.

Tr. 95. In addressing concentration and persistence in the RFC, the ALJ determined that Plaintiff is able to "concentrate and persist to complete simple tasks with normal breaks over an 8-hour workday." Tr. 22. This certainly seems to be consistent with Dr. Ragsdale's overall observations. At any rate, "the regulations do not require an ALJ to adopt into the RFC every part of an opinion that he otherwise finds persuasive." *League v. Comm'r of Soc. Sec.*, No. 2:20-CV-650-SPC-NPM, 2022 WL 1085540, at *6 (M.D. Fla. Feb. 7, 2022), *report and recommendation adopted*, 2022 WL 703011 (M.D. Fla. Mar. 9, 2022); *see also Young v. Kijakazi*, No. 8:20-CV-1622-SPF, 2022 WL 594271, at *5 (M.D. Fla. Feb. 28, 2022); *Nichols v. Kijakazi*, No. 3:20-CV-00224-SRW, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of Dr. Cleary's limitations into the RFC."); *Bullard v. Comm'r of Soc. Sec. Admin.*, No. 8:19-CV-289-T-23MCR, 2020 WL 3668792, at *6 n.10 (M.D. Fla. Feb. 20, 2020), *report and recommendation adopted*, 2020 WL 3640477 (M.D. Fla. July 6, 2020) ("[T]he ALJ's RFC assessment did not need to mirror or match the findings or opinions of any particular medical source because the final responsibility for assessing the RFC rests with the ALJ.").

As to Dr. Ragsdale's second statement, it was made in the context of discussing Plaintiff's "social interaction limitations," where Dr. Ragsdale also found Plaintiff moderately limited in some respects and not significantly limited in other respects. Tr. 95. Dr. Ragsdale's full concluding statement in this section (of which Plaintiff's Motion, again, only conveys a portion) was as follows:

> [Plaintiff] might have some problems in occupations where one's success is largely contingent on the ability to consistently display interpersonal facility with customers and/or collaborate effectively/amiably with coworkers/supervisors. Even so, he still has enough social wherewithal to manage perfunctory interactions and abide by the typical precepts set forth by most employers governing personal appearance/general conduct.

Tr. 95. In addressing social interaction limitations in the RFC, the ALJ determined that Plaintiff could "tolerate occasional interaction with supervisors, coworkers and the public." Tr. 22. Thus, she clearly accounted for Plaintiff having some moderate social limitations (consistent with Dr. Ragsdale's findings).

Plaintiff nonetheless argues that Dr. Ragsdale's "perfunctory interactions" comment conflicts with the ALJ's determination that Plaintiff could tolerate "occasional interaction." While "perfunctory" and "occasional" are obviously not exactly the same, it is clear from the full context of Dr. Ragsdale's statement and from all of his findings on Plaintiff's social interaction limitations that the ALJ's determination is largely consistent with Dr. Ragsdale's findings. *Cf. Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (rejecting argument that ALJ's RFC finding needed to contain all limitations discussed by state agency psychologists or explain why such limitations were omitted, and affirming notwithstanding argument that ALJ finding ability to "occasionally interact" conflicted with state psychologists' opinion that claimant could have only "limited and superficial social interaction"). Regardless, as noted above, simply because the ALJ found Dr. Ragsdale's findings to be persuasive does not mean that she was required to adopt his findings verbatim. Moreover, it is evident from her decision that she considered his findings and all of the other evidence. Thus, Plaintiff has failed to show that the ALJ's RFC determination is not supported by substantial evidence.[2]

---

[2] Plaintiff also argues that the ALJ committed prejudicial error by not incorporating the limitations Dr. Ragsdale found in the ALJ's hypothetical to the VE. However, the ALJ's hypothetical

### B. PLAINTIFF'S CONSTITUTIONAL ARGUMENT

Plaintiff argues that he is entitled to a new hearing because of a constitutional defect in the structure of the Social Security Administration (SSA), which he argues undermined the appointment and authority of the SSA's Commissioner and consequently infected the authority of the ALJ and other portions of the administrative process that determined his case. His argument fails.

Over the last few years, the Supreme Court has addressed both Appointments Clause[3] challenges and challenges related to the President's removal power.[4] *See Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). In the Appointments Clause context, the Supreme Court has held that "the 'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official" that is different from the prior official. *Lucia*, 138 S. Ct. at 2055 (citation omitted). In the removal power context, the Supreme Court has held that a for-cause restriction on the President's removal power violates the separation of powers. *See Collins*, 141 S. Ct. at 1783-87; *Seila*, 140 S. Ct. at 2197-207. Nonetheless, it has held that the appropriate remedy in this context, where a party is seeking retrospective relief for an unconstitutional limitation on the President's removal power, is not the same as the remedy in the

---

included all of the limitations that the ALJ ultimately found to exist in Plaintiff's RFC. *Compare* Tr. 22 *with* Tr. 59. Therefore, the VE's testimony constituted substantial evidence upon which the ALJ could rely. *See Walker*, 2022 WL 1022730, at *3.

[3] "The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) (citing U.S. Const. art. II, § 2, cl. 2).

[4] "'[A]s a general matter,' the Constitution gives the President 'the authority to remove those who assist him in carrying out his duties.'" *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2191 (2020) (citation omitted).

Appointments Clause context. In other words, a statute that unconstitutionally purports to restrict the President's removal power with respect to an official does not automatically void actions taken by that official (and those under him) where there is no basis to conclude that the official lacked the authority to hold his position. *See Collins*, 141 S. Ct. at 1787-88 & n.24.

Here, Plaintiff contends that 42 U.S.C. § 902(a)(3), which provides that the Commissioner of Social Security "may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," violates the separation of powers. Based on the Supreme Court's decisions in *Collins* and *Seila*, Plaintiff appears to be correct, which Defendant does not genuinely dispute.[5] Because of the limitation § 902(a)(3) purportedly imposes on the President's ability to remove the Commissioner of Social Security, Plaintiff argues that the ALJ's delegation of authority, which came from the Commissioner of Social Security, is constitutionally defective (and therefore seeks the remedy of a new hearing before a new ALJ). But in doing so, Plaintiff improperly seeks to apply the Appointments Clause remedy from *Lucia*. *Collins*, however, makes clear that the same remedy does not apply in this context.

Rather, to be entitled to relief here, Plaintiff must show compensable harm. *See Collins*, 141 S. Ct. at 1788-89. The Supreme Court has suggested two situations where a statute violating the President's removal power would cause harm: (1) where "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; and (2) where "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 1789. "This suggestion indicates that it will

---

[5] *See* Defendant's Motion at 10 ("The parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.").

be very challenging to obtain meaningful retrospective relief for constitutional removability claims after *Collins*." *Cochran v. U.S. Sec. & Exch. Comm'n*, 20 F.4th 194, 232 (5th Cir. 2021) (Oldham, J., concurring).

Plaintiff has failed to show any compensable harm. In his motion, he does not even acknowledge this requirement. In his reply, he contends that he has been injured because:

- He did not receive a constitutionally valid hearing and adjudication from an ALJ to which he was entitled.
- He did not receive a constitutionally valid decision from an ALJ to which he was entitled.
- He received an unfavorable decision from this constitutionally illicit ALJ adjudication process.
- He did not receive a constitutionally valid process from the SSA's Appeals Council to which he was entitled.
- He did not receive a constitutionally valid determination by the Appeals Council to which he was entitled.

[DE 20] at 4-5. But these overgeneralized, conclusory claims, which are all reworded expressions of the same alleged defect, flatly fail to establish harm. Significantly, Plaintiff does not contend that the Commissioner who appointed the ALJ was appointed in contravention of the Appointments Clause, and he provides no other basis to conclude that anything prevented the Commissioner from fulfilling the duties of his office. Moreover, "there is no link between the ALJ's decision . . . and the allegedly unconstitutional removal provisions." *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021). Ultimately, because Plaintiff has failed to establish anything even arguably close to the type of harm the Supreme Court envisioned, and because he has failed to show that the ALJ's decision was unlawful, his constitutional argument does not entitle him to any relief.[6] Notably, the other judges in this district who have addressed the same

---

[6] Justice Kagan's concurrence in *Collins* illustrates particularly persuasively that Plaintiff's argument is misplaced. *See Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring) ("[T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the Social Security Administration

15

argument Plaintiff raises here have all squarely rejected the argument (as have numerous other judges throughout the country).[7]

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court **DENY** Plaintiff's Motion [DE 17], **GRANT** Defendant's Motion [DE 18], and **AFFIRM** the final decision of the Commissioner.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28

---

(SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense. '[P]residential control [does] not show itself in all, or even all important, regulation.' When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue." (internal citations omitted)).

[7] *See Alicea v. Kijakazi*, No. 21-60760-CIV, 2022 WL 902858, at *8-10 (S.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 898563 (S.D. Fla. Mar. 28, 2022); *Gutierez v. Kijakazi*, No. 20-CV-25321, 2022 WL 977055, at *8 (S.D. Fla. Mar. 2, 2022), *report and recommendation adopted*, 2022 WL 970864 (S.D. Fla. Mar. 31, 2022); *John v. Kijakazi*, No. 20-61123-CIV, 2022 WL 718667, at *4-6 (S.D. Fla. Mar. 1, 2022), *report and recommendation adopted*, 2022 WL 715188 (S.D. Fla. Mar. 10, 2022); *Vergara v. Kijakazi*, No. 20-22964-CIV, 2022 WL 769704, at *6 (S.D. Fla. Feb. 23, 2022), *report and recommendation adopted*, 2022 WL 767125 (S.D. Fla. Mar. 14, 2022); *Tucker v. Kijakazi*, No. 21-60943-CIV, 2022 WL 750559, at *11-13 (S.D. Fla. Feb. 8, 2022), *report and recommendation approved*, 2022 WL 742744 (S.D. Fla. Mar. 11, 2022).

U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 3rd day of May 2022.

_Jared Strauss_
Jared M. Strauss
United States Magistrate Judge